IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:11 CR 361 AGF |
| | ) |
| FRED ROBINSON | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING GOVERNMENT'S USE OF GPS AND DEFENDANT'S MOTION TO SUPPRESS EVIDENCE IN LIGHT OF *UNITED STATES v. JONES***

Defendant Fred Robinson, through his attorneys Assistant Federal Public Defenders Felicia Jones and Diane Dragan, file this supplemental brief as requested by this Court to discuss the defendant's Motion to Suppress Evidence in light of *United States v. Jones*, 2012 WL 171117 (2012).

Mr. Robinson filed his Motion to Suppress on November 21, 2011, noting that the Supreme Court had heard oral arguments on the same issue in *United States v. Jones*, 2012 WL 171117. The Court denied this Motion on December 27, 2011. The Supreme Court decided the *Jones* case on January 23, 2012, holding that the government's attachment of a GPS device to a vehicle, and its use of that device to monitor the vehicle's movements over time constitutes a search under the Fourth Amendment. *Id.* at 7. The government filed a Motion asserting that although the Supreme Court has held that use of a GPS device without a warrant is a Fourth Amendment violation, this Court should nevertheless deny the defendant's Motion to Suppress because "the exclusionary rule does

not apply to suppress evidence obtained during a search conducted in reasonable reliance on appellate court precedent." (Government's Request for Supplemental Briefing, p. 2). *See also Davis v. United States*, 131 S.Ct. 2419, 2429 (2011). The government motion suggests that appellate courts had condoned the warrantless use of GPS devices at the time the device was placed on Mr. Robinson's vehicle. This position is not supported by a review of the law.

The agents illegally placed the GPS tracking device on Mr. Robinson's vehicle between January 22, 2010 through March 23, 2010. At that time, there was no Eighth Circuit precedent in place that the agents could have arguably relied on in good faith. Additionally, the Supreme Court decisions preceding the violation, cautioned against the warrantless use of GPS or other devices capable of gathering data twenty four hours a day. The appellate courts addressing this issue prior to January of 2010 were sharply divided. Ironically, even in the recently decided *Jones* case, a review of the facts show the officers initially believed a warrant was necessary prior to attaching the GPS device to the defendant's vehicle and did in fact attain a warrant. The government only took the position a warrant was not necessary when it was discovered the officers had ultimately acted outside of the warrant in placing the GPS device. The "law of the land" at the time this GPS device was unlawfully attached to Mr. Robinson's vehicle, was uncertain at best and careful review of Supreme Court holdings and circuit decisions indicate officers could not have been reasonably relying on appellate court precedent when deciding if a warrant was required.

**Supreme Court Precedent at the Time of the Violation**

Prior to January of 2010 when the GPS device was attached without a warrant, the latest Supreme Court decision on a related issue was *United States v. Knotts*, 460 U.S. 276 (1983). In the *Knotts* case, the enhanced surveillance was accomplished with a beeper, not a GPS device. It is

important to note, however, that beeper and GPS technology are fundamentally different in terms of the quantity of information revealed by the science. In that case, the government received a tip from a chemical company employee that the defendant was stealing chemicals to make illicit drugs. *Id.* at 278. The agents also learned that after the defendant left that company, he began purchasing similar chemicals at a local company. *Id.* With the consent of the chemical company, the government installed a beeper inside a five gallon container of chloroform that was ordered by the defendant. *Id.* After the defendant picked up the chemical, officers followed the vehicle using the signal from the beeper and located a cabin where both the defendant and the chemical arrived. *Id.* Relying on this location and additional information from three days of intermittent surveillance, the officers obtained a search warrant. *Id.* at 279. The Court found no expectation of privacy in this case since the defendant mainly went just from point A to point B, affirming the denial of the suppression. *Id.* at 282. An important relevant aspect in this decision is the Court's response to the defendant's concern that "twenty-four hour surveillance of any citizen of this country will be possible, without judicial knowledge or supervision." *Id.* at 283. The Supreme Court did not condone that forecasted conduct but cautioned:

> ... if such dragnet type law enforcement practices as respondent envisions should eventually occur, there will be time enough to determine whether different constitutional principles may be applicable.

*Id.* at 284. It is clear that the Court was careful to recognize that Fourth Amendment protections may be warranted if tracking surveillance revealed more than the limited quantity of information disclosed by a beeper during a short period of time. Disregard for the intrusiveness of GPS enabled technology ignores the Supreme Court's directive that such an inquiry is relevant to a determination of constitutional treatment.

3

**State Court Cases**

The Washington State Supreme Court was the first to confront the issue of whether a warrant was required to use a GPS tracking device. *State v. Jackson*, 159 Wash.2d 251 (2003). The defendant in that case was suspected of killing his daughter and burying her body. *Id.* at 256. The police obtained a 10 day warrant to attach GPS devices to the defendant's two vehicles. *Id.* The GPS allowed the vehicle's position to be precisely tracked. *Id.* Over the next two weeks, officers were able to track the defendant to several locations, noting how long he stayed at each place. *Id.* at 257. Based on the GPS information, a shallow gravesite was found and the defendant was arrested. *Id.* at 258. The defendant moved to suppress the GPS data, arguing a lack of probable cause for the warrants, but the lower court found that warrants were not even necessary. *Id.* The Washington Supreme Court granted review.

The State Supreme Court first noted that the state's constitution that "no person shall be disturbed in his private affairs, or his home invaded without authority of law," is more protective than the Fourth Amendment. *Jackson*, 150 Wash.2d at 259. The Court found that the use of a GPS device is not merely an enhancement of a person's senses. *Id.* at 261. The Court was clear about its concerns:

> We perceive a difference between the kind of uninterrupted, 24 hour a day surveillance possible through use of a GPS device, which does not depend upon whether an officer could in fact have maintained visual contact over the tracking period, and an officer's use of binoculars or a flashlight to augment his or her senses.
>
> ... the intrusion into private affairs made possible with a GPS device is quite extensive as the information obtained can disclose a great deal about an individual's life. For example, the device can provide a detailed record of travel to doctor's offices, banks, gambling casinos, tanning salons, places of worship, political party meetings, bars, grocery stores, exercise gyms, places

>where children are dropped off for school, play or day care, the upper scale restaurant and the fast food restaurant, the strip club, the opera, the baseball game, the "wrong" side of town, the family planning clinic, the labor rally.

*Id.* at 262. Based on this analysis, the Court found that a warrant is required for installation of GPS devices. *Id.* at 264. It should also be noted that the police in the case believed a warrant was required for GPS tracking and did in fact obtain a warrant.

Several other state courts had also addressed this issue prior to January of 2010 when the warrantless GPS device was placed on Mr. Robinson's vehicle. *See People v. Obujen*, 2005 WL 0519233 (Cal.Dist. Ct. App. May 7, 2005)(assuming without deciding that the GPS surveillance of defendant's vehicle was a search within the meaning of the Fourth Amendment); *People v. Lacey*, 2004 WL 1040676 (N.Y. Nassau County Ct. May 6, 2004)(finding that a warrant is required to install a GPS tracking device on a vehicle); and *State v. Jackson*, 76 P.3d 217 (Wash. 2003)(finding that a warrant is required prior to installation and use of a GPS device).

**8th Circuit Precedent at the Time in Question**

The only Eighth Circuit case applicable in January 2010 was *United States v. Frazier*, 538 F.2d 1322 (8th Cir. 1976)[1]. That case can be easily distinguished from the circumstances in the present case. In *Frazier*, the F.B.I. were contacted by a supervisor at McDonnell Douglas Corporation. *Id.* t 1323. An unknown person had contacted him regarding an extortion scheme. *Id.* Several subsequent phone calls were recorded and it was determined that the defendant, a retired naval officer and explosives expert, was responsible for the plot. *Id.* The scheme involved attaching an explosive belt to a wealthy victim with the removal contingent upon payment of a significant

---

[1] *United States v. Garcia*, 605 F.3d 604 (8th Cir. 2010) was not decided until after this incident, on May 21, 2010.

amount of money.  *Id.*  After the potential victim was identified, the agents installed a "bumper beeper" to the defendant's car.  *Id.*  No warrant was prepared or submitted to a judge.  *Id.*  On the day of the attempted abduction, agents used the "bumper beeper" to locate the defendant and arrest him.  *Id.*  The district court granted the defendant's Motion to Suppress evidence.  *Id.* at 1324.

On appeal the Eighth Circuit reversed this finding for several reasons.  The Court noted that in this case the agents had not only reasonable suspicion, but probable cause prior to attaching the beeper.  *Id.* at 1324.  The Court also noted that the facts in this case supported the existence of exigent circumstances justifying the intrusion based upon the imminent danger to the intended victim.  *Id.* at 1325.  Based on the safety of this individual and the limited time frame within which the F.B.I. agents were operating, this "provided sufficient exigent circumstances for the attachment of the tracking device in the instant case."  *Id.*  "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others."  *Id., citing Warden v. Hayden*, 387 U.S. 294, 298 (1967).

In the instant case there was no reasonable suspicion or probable cause.  The GPS device was placed under Mr. Robinson's car shortly after the F.B.I. received a tip that there might be a discrepancy in the defendant's work schedule. (See Motion Hearing Transcript, p. 27).  The purpose of placing the device was to obtain "the movement and location of the vehicle with Mr. Robinson in it."  *Id.* at p. 31.  When the device was attached, the agents had only a scant bit of information to work with:

> At that time, we did not know specifically what his hours of employment were supposed to be.  We had heard from some individuals that there was night hours worked, so at that time, we did not know when he was supposed to be performing his job.

6

(Motion Hearing, p. 37). Unlike the facts in *Frazier*, here there was no probable cause, nor reasonable suspicion that a crime was being committed and no exigent circumstance. The agents merely placed a GPS tracking device on Mr. Robinson's vehicle to obtain initial information before determining if a further investigation was even warranted. They did this without a warrant, without knowledge of what they were seeking and without any potential end date in sight. It is important to note that search warrants obtained for wire taps require a specific amount of time to be indicated, what they agents are seeking, and controls in place to prohibit interception of otherwise private information. Should the agents wish to extend the time frame for date collection in a wire tap, the government is required to reapply for an extension of the warrant. *See United States v. Falls*, 34 F.3d 674, 680 (8th Cir. 1994)(noting warrant must not allow period of surveillance to be longer than is necessary to achieve objective, or in any event any longer than thirty days, although extensions are possible). Here the GPS device was attached with no limitations of any type and in fact stayed in place for two months.

**Other Circuits**

There were several cases regarding tracking devices *not* discussed by the government in its Motion. For example in *United States v. Bailey*, 628 F.2d 938 (6th Cir. 1980), the government obtained a warrant and placed beepers in a drum of chemicals prior to the defendant purchasing them. *Id.* at 939. This beeper allowed agents to locate the chemicals in an apartment complex. *Id.* After the signal began to weaken, agents obtained a second warrant authorizing them to enter the complex, pinpoint the location of the chemicals, search that room and seize both the device and the chemicals. *Id.* After a lengthy discussion of the Fourth Amendment, the Court first noted that the warrants in this case were defective because they did not place a time limit on the beeper

7

surveillance. *Id.* at 945. Also in that case the government had argued that its agents acted in good faith and therefore the exclusionary rule should not apply. *Id.* at 947. The Court responded:

> ... the fourth amendment requires more than good faith; it requires observances of procedures designed to ensure that the search or seizure authorized by the warrant is reasonable.
>
> However, the Government's lack of bad faith does not, at least under the facts of this case, save its illegally obtained evidence from suppression.
>
> We think electronic surveillance has such a potential for abuse that the Government must be held accountable for its use.

*Bailey*, 628 F.2d at 947.

The Tenth Circuit dealt with electronic tracking devices in *United States v. Shovea*, 580 F.2d 1382 (10th Cir. 1978). Federal agents set up a controlled buy of chemicals and then followed one of the defendants back to his home. *Id.* at 1384. The agents then physically followed the man to the airport and traveled in the same plane. *Id.* A codefendant picked him up and the airport and the agents followed the men to another residence. *Id.* Once the men were inside, the agents placed a tracking device on the car. *Id.* The suitcase was delayed, but when it arrived at the airport it was x-rayed and it revealed four bottles of suspected chemicals. *Id.* The suitcase was delivered to the residence. *Id.* The agents continued to follow the defendants and observed them loading and unloading boxes. *Id.* In addressing the warrantless use of the tracking device, the Court found that it may be utilized without prior court approval if it is justified by probable cause and exigent circumstances. *Id.* at 1387. Neither of those justifications are present in Mr. Robinson's case.

The First Circuit took a similar approach to the use of beepers in *United States v. Moore*, 562 F.2d 106 (1st Cir. 1977). There again beepers were placed in chemical containers, as well as on the car of the defendant. *Id.* at 109. After noting that this issue was unlikely to be settled in the lower

8

courts, the First Circuit held that given *probable cause*, no warrant was required. *Id.* at 111.

In the government's Motion, it noted three circuit cases dealing with this issue, all of which can be easily distinguished. The first case is *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007). In that case prior to attaching the GPS device, police knew that the defendant had recently served time for drug offenses. *Id.* at 995. Through informants the police found out that the defendant had given methamphetamine to friends, used it himself and informed them he was going to start manufacturing the drug again. *Id.* A store's video security system recorded the defendant buying ingredients to make methamphetamine. *Id.* After obtaining this information, the officers attached the GPS device and tracked the vehicle to a tract of land. *Id.* The owner of that land gave consent to search and the officers discovered equipment and materials used in making meth. *Id.* The district court found that the officers had reasonable suspicion that the defendant was engaged in criminal activity and that was all they needed for a lawful search. *Id.* at 996. The Seventh Circuit upheld that ruling, noting that the officers here "do GPS tracking only when they have a suspect in their sights." *Id.* at 998. Again, this technique was used to track a vehicle to the location where the clandestine lab was located after discovering the defendant had purchased the precursor chemicals. A one or two day tracking of a suspect of whom the police have reasonable suspicion to believe is currently committing a crime is vastly different from a two month, 24 hour surveillance of a person that they have merely a "tip" from someone that he is not actually performing his job.

The second case cited by the government is *United States v. McIver*, 186 F.3d 1119 (9th Cir. 1999). There the U.S. Forest Service located marijuana plants in a National Forest. *Id.* at 1122. Agents installed motion activated cameras near the plants. *Id.* Photographs revealed both the defendant and his vehicle and showed him tending to the plants. *Id.* at 1123. After obtaining this

9

information, officers placed two tracking devices on the defendant's vehicle. *Id.* The GPS malfunctioned after three days but the beeper continued to work. *Id.* The officers were then able to know when the defendant went to the forest to harvest the plants and the cameras documented the act. *Id.* The Ninth Circuit only addressed the issue of whether there was a reasonable expectation of privacy in the exterior of a car, finding that there was not. *Id.* at 1126. Because there was also photographic evidence and the officers had obtained a search warrant for the defendant's home, discussion on this specific issue was minimal. In comparison to the present case, this decision did not have to grapple with the collection of continuous data over a two month period with no reasonable suspicion of criminal activity.

The final case cited by the government was decided eleven days prior to the attachment of the GPS device to Mr. Robinson's vehicle. *See United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010). Again in this case the agents had reasonable suspicion prior to utilizing a GPS device. Drug Enforcement Administration agents witnessed the defendant purchasing a large quantity of fertilizer, recognized as the type used to grow marijuana. *Id.* at 1213. They located the defendant's vehicle, and found information that he had purchased large quantities of groceries, irrigation equipment and deer repellant at several stores. *Id.* After obtaining this information, the agents attached a GPS device in order to locate the suspected growing site. *Id.* The Ninth Circuit relied on its earlier decision in *McIver* and found no warrant was necessary. It is important to note, however, that the officers there had at least reasonable suspicion, if not probable cause prior to the installation of the device.

## Conclusion

At the time the agents in this case attached the GPS device to Mr. Robinson's vehicle, there

had been no Eighth Circuit case addressing this issue. The most recent Supreme Court case cautioned against the use of a twenty-four hour a day surveillance. *See United States v. Knotts*, 460 U.S. at 284. In the majority of other cases, courts found the warrantless use of GPS devices allowable only upon a showing of probable cause or reasonable suspicion and exigent circumstances. The F.B.I. agent in the present case clearly testified that at the time, agents had only a tip regarding this case. Agents did not know Mr. Robinson's work schedule. The use of the GPS device was at the very beginning of the investigation with no specific time frame and no end in sight. There was no reasonable suspicion or exigent circumstances at the time, no drugs, chemicals or danger to others. Based on the facts in this case, dicta from the Supreme Court, and a variety of lower court cases that were struggling with this issue, the law of the land under *Davis* was clear that absent *at least* reasonable suspicion and exigent circumstances, a warrant must be sought for the use of a GPS device. Mr. Robinson therefore respectfully requests that his Motion to Suppress Evidence be granted.

        Respectfully submitted,

        /s/Felicia A. Jones
        FELICIA A. JONES

        /s/Diane Dragan
        DIANE DRAGAN

        Assistant Federal Public Defender
        1010 Market Street, Suite 200
        St. Louis, Missouri 63101
        Telephone: (314) 241-1255
        Fax: (314) 421-3177
        E-mail: Felicia_Jones@fd.org
               Diane_Dragan@fd.org

        ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2012 , the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Hal Goldsmith, Assistant United States Attorney.

/s/Felicia A. Jones
FELICIA A. JONES

/s/Diane Dragan
DIANE DRAGAN
Assistant Federal Public Defender