UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:11CR00361 AGF/DDN |
| | ) | |
| FRED W. ROBINSON, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
OBJECTIONS TO THE MAGISTRATE'S
REPORT AND RECOMMENDATION**

COMES NOW the United States of America, by and through Richard G. Callahan,

United States Attorney for the Eastern District of Missouri, and Hal Goldsmith, Assistant United

States Attorney for said District, and in response to Defendant Robinson's Objections to the

Magistrate's Report and Recommendation, states to this Honorable Court as follows:

1.       Global Positioning System ("GPS") Tracker.

Defendant Robinson moved to suppress all evidence derived from the government's GPS

Tracker installed without a warrant on defendant's vehicle.  In the Report and Recommendation

(R & R), the Magistrate Judge recommended that this motion be denied.  Subsequent to the

issuance of the R & R, the United States Supreme Court issued its opinion in *United States v.*

*Jones*, 2012 WL 171117, finding that a warrant was required prior to the installation and use of a

GPS Tracker similar to the one used in the instant case.  This Court requested the parties brief

this issue in light of the newly issued *Jones* opinion.

1

A. Facts Relating To The GPS Tracker.

On or about January 22, 2010, Special Agents of the FBI installed a GPS Tracker on defendant's vehicle while the vehicle was parked on a public street. (12-1-11 Hrg., p. 17)  The GPS Tracker was a small device, had its own battery supply, and was not "hard wired" into defendant's vehicle's battery or electrical system.  (12-1-11 Hrg., p. 16)  The GPS Tracker could not determine who was driving the vehicle, nor make any observations of the interior of the vehicle.  (12-1-11 Hrg., p. 18)  The GPS Tracker operated with an antenna that had to "see the sky" in order to operate, such that the GPS Tracker could not collect and record data if defendant's vehicle was in a garage or other roofed enclosure.  (12-1-11 Hrg., p. 18)  At no time during the period when the GPS Tracker was obtaining and recording data on defendant's vehicle was defendant's vehicle located in a private garage or other enclosure, and the vehicle was always in a location where passers by could physically observe the vehicle.  (12-1-11 Hrg., pp. 20-21)  The GPS Tracker solely obtained and recorded data relative to the movement and location of defendant's vehicle until on or about March 17, 2010, when the device stopped recording and transmitting data and was subsequently removed by FBI Special Agents, again while the vehicle was parked on a public street.  (12-1-11 Hrg., pp. 18-20)

The FBI agents were investigating allegations that defendant Robinson, a purported employee of the St. Louis Treasurer's Office, was in fact not performing any work for that Office, but turning in false weekly time sheets as part of a scheme to defraud and obtain money from that Office.  The agents conducted interviews and also conducted physical surveillance of defendant which substantiated the allegation that defendant was a ghost employee.

> Q.  ...was the initial allegation that you and the other agents
> investigated relative to – well, allegations that this defendant was a

2

ghost employee of the St. Louis Treasurer's Office?

A.  Correct, that was the initial allegation that there was a ghost employee on the payroll at the Treasurer's Office.

Q.  Okay, and based on your investigation, did you determine the allegations were specific as to this defendant, Fred W. Robinson?

A.  Yes, we identified the individual, and performed some additional interviews to corroborate that, and then some surveillance.

Q.  So you conducted interviews?

A.  Yes.

Q.  And did you do physical surveillance of the defendant Fred Robinson?

A.  Yes, we did.

(12-1-11 Hrg., pp. 13-14).

Q.  Did your physical surveillance corroborate or substantiate to a certain degree the allegations of the defendant being a ghost employee?

A.  Yes.

(12-1-11 Hrg., pp. 15-16).  One of the reasons for determining to utilize the GPS Tracker was the

agents' concerns that their surveillance agents would be spotted by defendant, as well as the

sheer number of agents required to conduct appropriate surveillance.

Q.  Did you have any concerns regarding your physical surveillance of the defendant?

A.  Yes, in order to be able to cover the time period of what he did during the day, we didn't want to be seen, so it was definitely a concern to be staying on him so that he would see our vehicles.

Q.  Okay, and when you say you conducted periodic surveillance of the defendant, was it more than just you out there as far as agents?

3

A.  Yes.

Q.  And based upon your observations and your concerns
regarding the physical surveillance, did you determine to utilize a
GPS, global positioning tracker?

A.  Yes.

(12-1-11 Hrg., pp. 15-16).

Q.  I mean, approximately how many would be needed in a
different – in a day of surveillance?

A.  In an entire day, I would probably call at least five to six
agents.

(12-1-11 Hrg., p. 15).

B.      Controlling Law At The Time The GPS Tracker Was Installed.

The GPS Tracker in the instant case was installed on January 22, 2010, and recorded data

through March 17, 2010.  At that time, the controlling law of the land was that no warrant was

required to install such a GPS Tracker on a vehicle and obtain data concerning that vehicle's

movement on public streets, as no Fourth Amendment right was impinged upon in either the

installation of the tracker or in the actual tracking.

In *United States v. Knotts*, 460 U.S. 276, 281 (1983), the Supreme Court held that a

person traveling in a vehicle on public streets has no reasonable expectation of privacy in his

vehicle's movements from one place to another and, thus, there can be no Fourth Amendment

violation.  In *Knotts*, a radio transmitter placed in container within a vehicle allowed agents to

trace movements of defendants from Minnesota to Wisconsin.  The Court found that when an

individual travels over public streets, he voluntarily conveys to anyone who wants to know, the

fact of whatever stops he made, and the fact of his final destination if and when he exited from

public roads onto private property. *Id.* In *United States v. Karo*, 468 U.S. 705, 715 (1984), the

Court found no Fourth Amendment violation where law enforcement placed a radio transmitter

in a can that was able to provide location information from within a premises. Unless the

monitoring device reveals "a critical fact" about the interior of a premises and instead only

reveals information voluntarily conveyed there is no violation. *Id.*

Relying upon *Knotts* and *Karo*, the Circuit Courts of Appeals have held specifically in

GPS Tracker cases similar to the instant case that such a use does not amount to a search or

seizure under the Fourth Amendment. In *United States v. Garcia*, 474 F.3d 994, 996 (7th Cir.

2007), the Seventh Circuit Court of Appeals found neither a seizure nor a search. "The

defendant's contention that by attaching the memory tracking device the police seized his car is

untenable". *Id.* "The Supreme Court has held that the mere tracking of a vehicle on public

streets by means of a similar though less sophisticated device (a beeper) is not a search". *Id.*,

citing *United States v. Karo*, 468 U.S. 705, 713-14 (1984). Similarly, in *United States v. Pineda-*

*Moreno*, 591 F.3d 1212 (9th Cir. 2010), the Ninth Circuit Court of Appeals relied upon *Knotts*,

*supra*, in concluding that the appellant had no expectation of privacy in the exterior of his

vehicle and, therefore, "the police did not conduct an impermissible [Fourth Amendment] search

of Pineda-Moreno's car by monitoring its location with mobile tracking devices". *Id.* At 1217,

citing *United States v. McIver*, 186 F.3d 1119 (9th Cir. 1999) (no Fourth Amendment violation

where police officers installed and monitored a magnetized tracking device upon appellant's

vehicle's exterior).

The Eighth Circuit Court of Appeals decided *United States v. Marquez*, 605 F.3d 604 (8th

Cir. 2010) several months *following* the use of the GPS tracker in the instant case and, thus, it

was not binding law at the time the agents used the tracker in this case.  However, a review of

*Marquez* certainly gives a clear understanding of the view of the applicable law in the Eighth

Circuit at the time the GPS tracker was utilized in this case.  It might not have been the "law" of

the land, but it gives this Court an understanding of the "lay" of the land in the Eighth Circuit at

the pertinent time, and it is consistent with the previously cited cases from the Seventh and Ninth

Circuits.  In *Marquez*, our Court of Appeals relied upon *Knotts*, *supra,* in finding that "a person

traveling via automobile on public streets has no reasonable expectation of privacy in his

movements from one locale to another".  *Id*. at 609.  The *Marquez* Court went on to conclude

that when police have reasonable suspicion to believe that a vehicle is involved in criminal

activity, "a warrant is not required when, while the vehicle is parked in a public place, they

install a non-invasive GPS tracking device on it for a reasonable period of time".  *Id.*  at 610,

citing *United States v. Garcia,* 474 F.3d 994 (7th Cir. 2007).  As Magistrate Judge Noce

appropriately noted, in relying upon *Marquez* and the previously cited Ninth and Seventh Circuit

Court cases, those are precisely the circumstances presented in the instant case:

> Here, installation of the GPS tracker device onto defendant Robinson's Cavalier
> was not a "search" because defendant Robinson did not have a reasonable
> expectation of privacy in the exterior of his Cavalier.  Agents installed the GPS
> tracker device onto defendant's Cavalier based on a reasonable suspicion that he
> was being illegally paid as a "ghost" employee on the payroll of the St. Louis City
> Treasurer's Office.  Installation of the GPS tracker device was non-invasive; a
> magnetic component of the GPS tracker device allowed it to be affixed to the
> exterior of the Cavalier without the use of screws and without causing any
> damage to the exterior of the Cavalier.  The GPS tracker device was installed
> when the Cavalier was on a public street near defendant's residence.  See
> Marquez, 610 F.3d at 610.  Installation of the GPS tracker device revealed no
> information to the agents other than the public location of the vehicle.  See Karo,
> 468 U.S. at 712.  Under these circumstances, installation of the GPS tracker
> device was not a search within the meaning of the Fourth Amendment.

(R & R, p. 15).[1]  Magistrate Judge Noce also relied upon the previously cited cases from the

Seventh and Ninth Circuits in properly finding that a seizure had not occured in the instant case:

> Here, installation of the GPS tracker device onto defendant Robinson's Cavalier
> was not a "seizure" under the Fourth Amendment.  Defendant Robinson's
> Cavalier was parked on a public street when agents affixed the GPS tracker
> device; the agents did not trespass onto defendant's property.  The GPS tracker
> device did not deprive defendant Robinson of dominion and control of his
> Cavalier, nor did the presence of the GPS tracker device interfere with the
> electronic components of the Cavalier, draw power from the Cavalier, take up
> room that might otherwise have been occupied by passengers or packages, or alter
> the Cavalier's appearance.  Therefore, installation of the GPS tracker device was
> not a seizure within the meaning of the Fourth Amendment.

(R & R, p. 17).

Defendant Robinson cites this Court to several older cases which should not be held to be

applicable here.  *United States v. Bailey*, 628 F.2d 938 (6th Cir. 1980) involved the placement of

beepers inside drums of chemicals which were monitored while inside commercial premises

after obtaining judicial warrants.  The case does not involve the use of a tracker on a vehicle, was

decided before *United States v. Knotts*, 460 U.S. 276, 281 (1983), and actually distinguished

those previous cases which have involved trackers on vehicles and airplanes where the Courts

"upheld the installation of beepers on the exteriors of cars and airplanes parked in areas lawfully

accessible to Government agents" because the defendants in those cases "exhibited no subjective

expectation of privacy".  *Id.* at 942.  The other two cases cited by defendant Robinson, *United*

*States v. Shovea*, 580 F.2d 1382 (10th Cir. 1978) and *United States v. Moore*, 562 F.2d 106 (1st

Cir. 1977), were also both decided before the Supreme Court's opinion in *Knotts*, *supra*, and

---

[1] While the GPS tracker placed on defendant Robinson's vehicle was installed and recorded data for approximately just under two months, Magistrate Noce noted that the GPS tracker utilized in *Marquez* was installed and recording date for approximately six months.  (R & R, p. 14, n. 10).

both cases' rulings affirmed the use of trackers on vehicles upon findings that the agents had

probable cause to believe that the vehicles in question were involved in criminal activity.  Had

those opinions issued after *Knotts*, it appears clear, based upon the facts and circumstances of

each case, that the Courts would have applied the holding in *Knotts,* not conducted a probable

cause analysis, and held that a person traveling in a vehicle on public streets has no reasonable

expectation of privacy in his vehicle's movements from one place to another and, thus, there can

be no Fourth Amendment violation.

> C.  *United States v. Jones,* 2012 WL 171117 (2012).

In *Jones*, the Supreme Court has now determined and held that government agents'

attachment of a GPS tracking device, similar to the one used in the instant case, to the exterior of

a vehicle, and use of that device to monitor the vehicle's movements, constitutes a "search"

under the Fourth Amendment.  The Court rested its opinion on a finding that the agents had

committed a trespass upon the individual's vehicle and, thus, conducted a "search" of the

individual's "effects".  The Court did not address the government's argument that the "search"

was reasonable under the facts and circumstances of the case.

In *Davis v. United States,* 131 S.Ct. 2419 (2011), the Supreme Court examined whether

evidence obtained during a vehicle search by officers acting in reliance upon controlling

appellate court precedent should be suppressed where, subsequent to the officers' search, the

Supreme Court issued an opinion, *Arizona v. Gant*, 129 S.Ct. 1710 (2009), finding that such a

search would be in violation of the Fourth Amendment.  The *Davis* Court refused to suppress the

evidence, finding that the exclusionary rule does not apply to suppress evidence obtained during

a search conducted in reasonable reliance on appellate court precedent.  *Davis*, at 2429.  In the

instant case, in attaching the GPS tracker to defendant's automobile without a warrant, and tracking the automobile's movements through use of the GPS tracker, the agents relied upon and strictly adhered to then controlling appellate court opinions that addressed the specific issue and which had found no requirement for a court ordered warrant. *See*, *United States v. Garcia*, 474 F.3d 994, 996-98 (7th Cir. 2007); *United States v. McIver*, 186 F.3d 1119, 1226-27 (9th Cir. 1999); *United States v. Pineda-Morena*, 591 F.3d 1212 (9th Cir. 2010). At the time the agents here utilized the GPS tracker on defendant's automobile, the government was unaware of any appellate court that had determined that a warrant was required to place such a tracker on a vehicle under similar facts and circumstances. Just a few months after the use of the GPS tracker in the instant case, the Eighth Circuit can be found to have ratified the agents' conduct here in a case with markedly similar underlying facts, *United States v. Marquez*, 605 F.3d 604 (8th Cir. 2010), following and applying the logic of the Seventh and Ninth Circuits in finding that a warrant was not required for the placement and use of a GPS tracker. *See also*, *United States v. Hernandez,* 647 F.3d 216, 220 n.4 (5th Cir. 2011); *United States v. Cuevas-Perez*, 640 F.3d 272, 273 (7th Cir. 2011). The District of Columbia Circuit Court of Appeals' opinions underlying *Jones* and which found a warrant requirement, *United States v. Maynard,* 615 F.3d 544(D.C. Cir. 2010) and *United States v. Jones*, 625 F.3d 766 (D.C. Cir. 2010) were not issued until approximately seven months *after* the agents here had installed the GPS tracker. The Supreme Court's opinion in *Jones* did not issue until two full years *after* the agents' installation of the GPS tracker in the instant case. Thus, it is the government's position, relying upon *Davis*, *supra*, that the Supreme Court's recent opinion in *Jones* does not require the exclusion of the GPS tracking evidence in the instant case. The agents here acted reasonably and responsibly,

9

and with the good faith belief that their conduct was lawful, and there is no need to deter their

innocent conduct through application of the exclusionary rule.

Further, contrary to defendant's argument, from the testimony presented at the

suppression hearing concerning interviews and physical surveillance, the agents here had

reasonable suspicion and probable cause to believe that defendant was engaged in a criminal

fraud against the St. Louis City Treasurer's Office, and that he was utilizing his vehicle in that

fraud, prior to installation of the GPS tracker. Thus, it is the government's position that even if

the installation and monitoring of the GPS tracker was a "search", it was a reasonable one under

all of the facts and circumstances and that evidence should not be excluded.

2. Motion To Sever.

Defendant moved to sever the counts relating to his alleged fraud involving Paideia

Academy from the counts relating to his alleged fraud involving the Treasurer's Office. The

Magistrate Judge properly determined that the counts need not be severed under Federal Rule of

Criminal Procedure 8(a), as the alleged fraudulent schemes "are of the same or similar

character". (R & R, p. 9). Citing *United States v. Garrett*, 648 F.3d 618, 625 (8th Cir. 2011), the

Magistrate Court determined that counts can be found to be "of the same or similar character"

when they "refer to the same type of offenses occurring over a relatively short period of time".

*Id.* The Magistrate Court, applying Rule 8(a) liberally, found that "all of the counts in the

indictment are of a similar character (obtaining money by fraudulent activity) and the allegations

in the indictment temporally overlap". *Id.* Thus, the Magistrate Court deemed joinder proper.

As the government argued at the motion hearing, the government's evidence will overlap

substantially in showing that, during the very time that defendant was engaged in his fraudulent

scheme involving Paideia to obtain money, defendant was involved in his fraudulent scheme to obtain money from the Treasurer's Office.  The government's allegation is that while defendant was supposed to be performing work for the Treasurer's Office, he was actually at Paideia engaging in a fraudulent scheme to obtain money and funds for a child care center in which he held ownership.  These basic schemes are set forth in the Indictment.  Many of the same witnesses will be called to testify relative to both the Paideia scheme and the Treasurer's Office scheme.  As Magistrate Judge Noce noted, "joint trials are favored because they 'conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial'".  (R & R, p. 9, citing *United States v. Lane*, 474 U.S. 438, 449 (1986)).  The government submits that any minimal prejudice to defendant caused by a joint trial can be adequately dealt with by this Court through *voir dire*, appropriate jury instructions and appropriate jury admonitions during the trial.

       3.      Motion To Dismiss.

The Magistrate Court properly determined that Title 18, U.S.C., Section 666(a)(1)(A) is constitutional, under the "authority of Congress to protect federal funds from criminal dissipation".  (R & R, p. 4).  The Magistrate Court also properly determined that, whether or not defendant's wages are bona fide and earned in the usual course of business, to come within the exception to Section 666(c), is a question for the jury.  (R & R, p. 6).  Defendant Robinson is alleged in the instant case to have been a ghost employee of the Treasurer's Office, submitting false and fraudulent weekly time sheets as part of his scheme to receive Treasurer's Office funds.  The 666(c) exception does not apply here, as the moneys obtained by defendant through his fraud were neither bona fide, nor legitimate wages in the ordinary course of business.

## CONCLUSION

For the foregoing reasons, the Magistrate Judge's Report and Recommendation should be

adopted by this Court, and defendant Robinson's various pretrial motions should be denied.

Respectfully submitted,

RICHARD G. CALLAHAN
UNITED STATES ATTORNEY


     /s/ Hal Goldsmith
ASSISTANT UNITED STATES ATTORNEY
111 South 10th Street, Suite 20.333
St. Louis, Missouri 63102
314.539.2200
hal.goldsmith@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2012, the foregoing was filed electronically with the Clerk
of the Court to be served by operation of the Court's electronic filing system upon the following:

Felicia Jones, Assistant Federal Public Defender.


     /s/ Hal Goldsmith
ASSISTANT UNITED STATES ATTORNEY