UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. S 4:11CR00361 AGF/DDN |
| | ) |
| FRED W. ROBINSON, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTION TO SUPPRESS GOVERNMENT'S USE OF GPS EVIDENCE**

COMES NOW the United States of America, by and through Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Hal Goldsmith, Assistant United States Attorney for said District, and hereby responds to Defendant Robinson's Motion To Suppress Government's Use of GPS Evidence (doc. 67).  For the reasons discussed below, Robinson's motion should be denied.

1. The government adopts and fully incorporates by reference, as if fully set forth herein, *Government's Response to Defendant's Motion to Suppress Evidence* (doc. 30), *Government's Response to Defendant's Objections to the Magistrate's Report and Recommendation, pp. 1 - 10* (doc. 53), and *Government's Statement as to Additional Evidence Relating to Reasonable Suspicion* (doc. 61).

2. Defendant now argues that the federal law enforcement agents did not have reasonable suspicion to believe that defendant was involved in a scheme to defraud at the time the agents attached the GPS Tracker to defendant's vehicle.  At the December 1, 2011

1

evidentiary hearing, the government presented evidence that, prior to installation of the GPS Tracker, the agents had performed several witness interviews and conducted physical surveillance of defendant which "corroborated or substantiated to a certain degree the allegations of the defendant being a ghost employee". In its *Government's Statement as to Additional Evidence Relating to Reasonable Suspicion* (doc. 61), the government requested the opportunity to present additional evidence specifically as to the issue of reasonable suspicion, and the Court granted the government's request and set an evidentiary hearing for March 29, 2012. The government intends to present that additional evidence on the issue of reasonable suspicion at that time.

3. The government presented argument in support of a finding of reasonable suspicion in this case during the February 17, 2012 hearing before this Court. As the government stated then, even with the Supreme Court finding that the use or attachment of the GPS tracking device was a search or seizure, defendant's Fourth Amendment rights were not violated as the agents acted upon reasonable suspicion. This is an issue that was not addressed by the Supreme Court in *United States v. Jones*, 132 S.Ct. 945 (2012). Not every Fourth Amendment intrusion requires a warrant or probable cause; to the contrary, the general test is one of reasonableness. Because installation and use of a GPS device is, at most, only minimally intrusive, and because GPS surveillance is a critically important law enforcement tool that often may be most important in the inception of an investigation when probable cause is lacking, the Fourth Amendment balancing test should not require probable cause or a warrant as a prerequisite to the attachment and use of a GPS tracking device.

4. The Supreme Court has stated that under its "general Fourth Amendment

approach," it "examine[s] the totality of the circumstances" to determine whether a search or seizure is reasonable under the Fourth Amendment." *Samson* v. *California,* 547 U.S. 843, 848 (2006) (internal quotation marks and citation omitted). Under that analysis, the reasonableness of a search or seizure is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Ibid.*

5. Since *Terry* v. *Ohio,* 392 U.S. 1 (1968), the Supreme Court has identified various law enforcement actions that qualify as Fourth Amendment searches or seizures, but that may nevertheless be conducted without a warrant or probable cause. In *Terry,* the Court noted that an officer who stops a person on the street and frisks him for weapons has effected a "seizure" and "search" within the meaning of the Fourth Amendment. But because "the central inquiry under the Fourth Amendment [is] the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security," *id.* at 19, the Court concluded that a stop and frisk, which is considerably less intrusive than a full-blown arrest and search of a person, may be undertaken on less than probable cause, although the facts known to the officer must at least support a reasonable inference of unlawful activity and, for the frisk, that the person may be armed, *id.* at 29.

6. In subsequent cases, the Supreme Court has continued to recognize various types of police activities that amount to searches or seizures, but need not be justified by a warrant or probable cause. See, *e.g., Samson,* 547 U.S. at 847 (individualized suspicion not required for search of parolee's home or person); *United States* v. *Knights,* 534 U.S. 112, 118-121 (2001) (upholding search of probationer's home based on reasonable suspicion); *New Jersey* v. *T.L.O.,*

3

469 U.S. 325, 341-342 (1985) (upholding search of public school student based on reasonable suspicion); *United States* v. *Place,* 462 U.S. 696, 706 (1983) (upholding seizure of traveler's luggage on reasonable suspicion that it contains narcotics); *United States* v. *Martinez-Fuerte,* 428 U.S. 543, 554-555 (1976) (upholding suspicionless vehicle stops at fixed border patrol checkpoints).

7. Applying the Supreme Court's balancing test to GPS tracking of vehicles on public roads, neither a warrant nor probable cause should be required where the agents have reasonable suspicion. The privacy interest, if any, is minimal. A GPS tracking device does not conduct either a visual or aural search of the item to which it is attached. See *Smith,* 442 U.S. at 741-742 (noting that pen register records record and reveal only the numbers dialed from a phone and not the contents of any conversation). The GPS device does not reveal who is driving the car, what the occupants are doing, or what they do when they arrive at their destination; it provides information only about the vehicle's location. And the information that the tracking device reveals about the vehicle's location could also be obtained (albeit less efficiently) by means of visual surveillance. The Supreme Court "has recognized significant differences between motor vehicles and other property which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts." *United States* v. *Chadwick,* 433 U.S. 1, 12 (1977); see also *Cardwell,* 417 U.S. at 590; *South Dakota* v. *Opperman,* 428 U.S. 364, 368 (1976). Accordingly, GPS monitoring does not require the protection of a warrant. The intrusion occasioned by attachment of a tracking device on a vehicle is also minimal. Attachment is much less intrusive than the typical stop and frisk. Nothing from the vehicle is removed, nor is any enclosed area entered.

8. On the other side of the ledger, the minimal protection of an individual's privacy, if any, resulting from the necessity of obtaining a warrant before using a tracking device on a

vehicle would come at great expense to law enforcement investigations. A requirement of a warrant and probable cause would seriously impede the government's ability to investigate leads and tips on drug trafficking, terrorism, and other crimes. Law enforcement officers could not use GPS devices to gather information to *establish* probable cause, which is often the most productive use of such devices.

9.      If a Fourth Amendment balancing test were held applicable here, no violation would exist on the facts of this case. As determined by this Court, the agents had reasonable suspicion to believe that defendant was a ghost employee at the Treasurer's Office, engaged in a scheme to defraud. Because the substantial law enforcement interest in investigating such an offense outweighs the very limited Fourth Amendment privacy interests that are implicated by GPS surveillance, that particularized suspicion was more than adequate to support the warrantless attachment of a GPS Tracker to defendant's vehicle and the subsequent use of the device to monitor the vehicle's movements on public roads.[1]

## **CONCLUSION**

---

[1] In *United States v. Karo,* 468 U.S. 705 (1984), the Court required a warrant for the beeper surveillance in that case, rejecting the government's argument that "the beeper constitutes only a miniscule intrusion on protected privacy interests." 468 U.S. at 717. But *Karo* does not suggest the need for a warrant here, for at least two reasons. First, *Karo* involved a search inside a private residence, which lies at the core of Fourth Amendment protection, while this case involves travel on public roadways, which lies (at best) on the periphery. Second, the Court left open in *Karo* whether reasonable suspicion would be sufficient for beeper monitoring, see *id.* at 718 n.5, which casts doubt on any categorical warrant requirement for electronic monitoring of location. If a warrant would always be required, so would probable cause, because the Fourth Amendment permits issuance of a warrant only on probable cause. See *Griffin* v. *Wisconsin,* 483 U.S. 868, 877-878 (1987).

For the foregoing reasons, Robinson's Motion to Suppress should be denied.

Respectfully submitted,

RICHARD G. CALLAHAN
UNITED STATES ATTORNEY

_/s/ Hal Goldsmith_
ASSISTANT UNITED STATES ATTORNEY
111 South 10th Street, Suite 20.333
St. Louis, Missouri 63102
314.539.2200
hal.goldsmith@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2012, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Felicia Jones, Assistant Federal Public Defender.

_/s/ Hal Goldsmith_
ASSISTANT UNITED STATES ATTORNEY