UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:11-CR-361 AGF/DDN |
| ) | |
| Fred W. Robinson, ) | |
| ) | |
| Defendant. ) | |

**BRIEF OF AMICI CURIAE THE ACLU AND THE ACLU OF EASTERN MISSOURI IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The ACLU and ACLU of Eastern Missouri submit this amicus brief in support of defendant's motion to suppress evidence gathered through attachment of a GPS tracker to his vehicle without a warrant based on probable cause. After the Supreme Court's decision in *United States v. Jones*, 132 S. Ct. 945 (2012), it is even more apparent that the government must obtain a warrant based on probable cause prior to affixing a GPS device to a car. The magistrate judge's conclusion that reasonable suspicion, absent any judicial supervision, is sufficient is based on a misreading of the Eighth Circuit's decision in *United States v. Marquez*, 605 F.3d 604 (8th Cir. 2010), which is in any event no longer good law. This Court should adhere to the Supreme Court's long-standing directive that warrantless searches are presumptively unreasonable and hold that defendant's Fourth Amendment rights were violated.

The magistrate judge further concluded that even if there was a Fourth Amendment violation, evidence obtained from the GPS tracker should not be suppressed

1

because agents reasonably relied on binding precedent, but no such precedent exists. The magistrate judge's conclusion to the contrary rests on a misreading of *Davis v. United States*, 131 S. Ct. 2419 (2011), one that would sharply curtail the applicability of the exclusionary rule and frustrate the deterrence of constitutional violations by law enforcement agents. Suppression is the normal remedy for a Fourth Amendment violation, and it should be granted here.

## FACTUAL BACKGROUND

The facts of this case are set out in the Second Pretrial Order and Recommendation. Second Pretrial Order & Rec. 17-26, ¶¶ 1-40, May 24, 2012, ECF No. 83 (hereinafter "Second PTO"). Relevant to defendant's motion to suppress, on January 22, 2010, Federal Bureau of Investigation agents attached a GPS device to defendant's vehicle. Second PTO at 25, ¶ 32. They did so without first obtaining any form of court order. *Id.* From that date until March 17, 2010—54 days later—the GPS tracker device transmitted defendant's location 24 hours a day. *Id.* at 25, ¶ 34. On March 23, 2010, the agents removed the GPS tracker. *Id.* at 26, ¶ 38. According to the magistrate judge, "[t]he purpose of the tracker was to observe and record the movements and locations, in realtime, of defendant's" vehicle. *Id.* at 25, ¶ 32. And in fact, during this nearly two-month period, the GPS tracker did demonstrate "defendant's daily pattern of activity." *Id.* at 26, ¶ 39.

## ANALYSIS

I. **THE AGENTS VIOLATED DEFENDANT'S FOURTH AMENDMENT RIGHTS.**

Following the Supreme Court's decision in *Jones*, it is undisputed that the installation and use of the GPS tracker on defendant's car was a Fourth Amendment

2

search. 132 S. Ct. at 949. Because that search was conducted without a warrant, it was presumptively unreasonable, *see Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)), and this Court should hold that the government violated defendant's Fourth Amendment rights by not obtaining a warrant based on probable cause. The magistrate judge's conclusion—that *United States v. Marquez* establishes that reasonable suspicion suffices to render the search constitutional, Second PTO at 34—is mistaken on two independent grounds. Because *Marquez* held that under nearly identical facts the installation and use of a GPS was *not* a search, 605 F.3d at 609-610, it has been overruled by *Jones* and is not binding on this Court. Moreover, because *Marquez* held that no search occurred, as a matter of law it could not have established the sufficiency of reasonable suspicion as a predicate if (and when) GPS tracking was later held to be a Fourth Amendment search.

Furthermore, no exception to the warrant requirement is applicable in this case. The "automobile exception" to the warrant requirement does not extend to surveillance that reveals someone's movements for a prolonged period, and the ad hoc balancing test the government proposes is both impracticable and irreconcilable with the Supreme Court's insistence that warrantless searches are presumptively unconstitutional.

    A.    **A Fourth Amendment Search Occurred.**

In *Jones*, a unanimous Supreme Court held that the installation of a GPS tracking device on the defendant's car and the continuous monitoring of its location for a 28-day period was a search under the Fourth Amendment. 132 S. Ct. at 949 (majority opinion); *id.* at 964 (Alito, J., concurring). Writing for himself and four others, Justice Scalia explained that physical trespass of the defendant's property in order to install the tracker

3

and obtain information would have been considered a search under the Amendment at the time of its adoption, and that the case could be resolved on that ground alone. *Id.* at 950 (majority opinion). A different five Justice majority—comprised of the concurring opinions of Justices Alito and Sotomayor—reached the same conclusion on the ground that "longer term GPS monitoring . . . impinges on expectations of privacy." *Id.* at 964 (Alito, J., concurring); *id.* at 955 (Sotomayor, J., concurring). As Justice Alito explained, "society's expectation has been that law enforcement agents and others would not—and indeed, in the main, simply could not—secretly monitor and catalogue every single movement of an individual's car for a very long period." *Id.* at 964 (Alito, J., concurring).

This case is virtually identical to *Jones*, except that the search was nearly twice as long. Without obtaining a warrant, FBI agents attached a GPS tracking device to the exterior of defendant's car, enabling them to monitor him continuously over a nearly two-month period. *See* Second PTO at 25. As *Jones* held, affixing a GPS monitor and then tracking an individual's whereabouts for weeks constitutes a "search" within the meaning of the Fourth Amendment. The *Jones* Court did not consider (because it was not properly raised) the question of whether the search was reasonable despite the lack of a warrant. 132 S. Ct. at 954. Contrary to the magistrate judge's conclusion, however, this question has *not* been addressed by binding Eighth Circuit precedent. This Court should hold that the search was not reasonable and that the government must obtain a warrant based on probable cause before installing and using a GPS tracker.

### B.     The Warrantless Surveillance Of Defendant Violated The Fourth Amendment.

#### 1.     Warrantless searches are presumptively unreasonable.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. "[E]very case addressing the reasonableness of a warrantless search [should begin] with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Gant*, 556 U.S. at 338 (quoting *Katz,* 389 U.S. at 357); *United States v. Claude X*, 648 F.3d 599, 602 (8th Cir. 2011) (same).

Warrants are presumptively required because they "provide[] the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer 'engaged in the often competitive enterprise of ferreting out crime.'" *United States v. Chadwick*, 433 U.S. 1, 9 (1977) (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)). The process of obtaining a warrant serves a crucial function in and of itself: preventing the state from conducting searches solely at its discretion. *See Coolidge v. New Hampshire*, 403 U.S. 443, 481 (1971). "[Warrants are] not an inconvenience to be somehow 'weighed' against the claims of police efficiency." *Id.*

The warrant requirement's safeguard is particularly important in the context of GPS tracking, which "is cheap in comparison to conventional surveillance techniques and, by design, proceeds surreptitiously." *Jones*, 132 S. Ct. at 956 (Sotomayor, J., concurring); *see also id.* at 963-64 (Alito, J., concurring) (noting difficulty and expense of continuous, extended tracking for traditional law enforcement). Thus, if GPS tracking

5

is not subject to a warrant requirement, it can "evade[] the ordinary checks that constrain abusive law enforcement practices: 'limited police resources and community hostility.'" *Id.* at 956 (Sotomayor, J., concurring) (quoting *Illinois v. Lidster,* 540 U.S. 419, 426 (2004)).

### 2. *Marquez* does not establish that reasonable suspicion is sufficient for extended GPS tracking.

Despite the presumptive unreasonableness of warrantless searches, the magistrate judge concluded that the FBI's nonstop monitoring of defendant's movements was permissible because agents had reasonable suspicion that he was engaging in criminal conduct. Second PTO at 38. The magistrate judge concluded that a pre-*Jones* Eighth Circuit decision, *United States v. Marquez*, established that installation and use of a GPS tracking device did not require a warrant when undertaken with reasonable suspicion. The magistrate judge further determined that *Marquez* "was not disturbed by the Supreme Court's holding in *Jones* . . . [because *Jones*] declined to address whether such a search would be reasonable without a warrant if the investigating agents reasonably suspected criminal activity." Second PTO at 34. The magistrate judge's recommendation is mistaken because *Marquez* was in fact invalidated by *Jones* and in any event could not have purported to resolve the question at issue here.

In *Marquez*, the court of appeals considered a defendant's motion to suppress evidence obtained from the warrantless installation and use of a GPS tracker to monitor his movements while he was a passenger in a car.[1] 605 F.3d at 609-10. The court held

---

[1] The *Marquez* court initially held that the defendant, Acosta, did not have standing to challenge the installation and use of the GPS because he "ha[d] an insufficiently close connection" to the car tracked by the police. 605 F.3d at 609 (citing *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994)). Nevertheless, the court went on to rule on the validity of the GPS tracker under the Fourth Amendment. *Id.*

6

that because the "electronic monitoring d[id] not invade upon a legitimate expectation of privacy, *no search ha[d] occurred.*" *Id.* at 609 (emphasis added) (citing *United States v. Knotts*, 460 U.S. 276, 281 (1983)).

In *Jones*, all nine Justices expressly rejected *Marquez*'s holding that no search occurs in this situation, and five Justices expressly rejected its reasoning that "[a] person traveling via automobile on public streets has no reasonable expectation of privacy in his movements from one locale to another." *Marquez*, 605 F.3d at 609 (citing *Knotts*, 460 U.S. at 281). Because the rationale of *Marquez* has been wholly eclipsed, its rule can no longer be considered binding on this Court.[2]

Furthermore, even if *Marquez* had not been fully abrogated by *Jones*, it would not stand for the proposition that prolonged GPS searches can be predicated on mere reasonable suspicion. *Marquez* never purported to rule directly on the question now before this Court. Because the court held that no search had occurred, it could not have established the standard that would apply if the installation and use of a GPS tracker were later ruled a search. It is black-letter law that where a specific law enforcement practice does not constitute a search, police need not develop even reasonable suspicion of criminal activity, let alone seek a warrant based on probable cause. As Judge Posner noted in *Garcia*, "the overarching requirement of reasonableness does not come into play unless there is a search . . . within the meaning of the Fourth Amendment." *United States v. Garcia*, 474 F.3d 994, 996 (7th Cir. 2007).

---

[2] It should be noted that two pre-*Jones* decisions by the Seventh and Ninth Circuits that reached nearly identical conclusions to *Marquez* have been vacated and remanded by the Court in light of *Jones*. *United States v. Cuevas-Perez*, 640 F.3d 272 (7th Cir. 2011), *cert. granted, vacated & remanded*, 132 S. Ct. 1534 (2012); *United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010), *cert. granted, vacated & remanded*, 132 S. Ct. 1533 (2012).

The government's insistence that *Marquez* continues to apply to installation and use of GPS trackers sidesteps the Supreme Court's major legal developments in *Jones:* namely, that installation and use of a GPS tracker is a search under the Fourth Amendment and that it impinges on society's reasonable expectation of privacy. *Jones*, 132 S. Ct. at 949; *id.* at 964 (Alito, J., concurring). After *Jones*, it would be error to mechanically apply *Marquez* when its reference to reasonable suspicion is at most an artifact of the pre-*Jones* legal environment.

### 3. No exceptions to the warrant requirement are applicable.

Warrantless searches are per se unreasonable, "subject only to a few specifically established and well-delineated exceptions." *Katz*, 389 U.S. at 357. Because none of those exceptions are applicable here, the government violated defendant's constitutional rights by not securing a warrant based on probable cause before attaching a GPS tracker to his vehicle.

The magistrate judge suggested that the "automobile exception" applied in this case because the search involved the tracking of a car whose exterior was exposed to plain view, Second PTO at 34-35, but this was error. Neither of the two justifications for the automobile exception recognized by the Supreme Court has any bearing here. In one line of cases, the Court has allowed warrantless searches of vehicles because of "the exigent circumstances that exist in connection with movable vehicles. . . . This is strikingly true where the automobile's owner is alerted to police intentions and, as a consequence, the motivation to remove evidence from official grasp is heightened." *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974); *see also Carroll v. United States*, 267 U.S. 132 (1925). But prolonged GPS tracking over a period of months is by definition the

8

antithesis of an "exigent circumstance." And in the event that a genuine flight risk were to arise, the exigency exception would apply. *See, e.g., Mincey v. Arizona*, 437 U.S. 385, 394 (1978) (warrantless search is permissible where "exigencies of situation" make search "objectively reasonable").

In other instances, the Court has allowed warrantless searches of vehicles because individuals have a reduced expectation of privacy in their cars, "not from the fact that the area to be searched is in plain view, but from the pervasive regulation of vehicles capable of traveling on the public highways." *California v. Carney*, 471 U.S. 386, 392 (1985) (citing *Cady v. Dombrowski*, 413 U.S. 433, 440-441 (1973)). But this limitation of privacy based on the public's understanding of the need for discrete regulatory inspections cannot be extended to warrantless GPS tracking. To do so would stretch the automobile exception beyond its breaking point and sanction "wholesale surveillance," *Garcia*, 474 F.3d at 998, and "dragnet type law enforcement practices." *Knotts*, 460 U.S. at 284. Whatever the reduced expectation of privacy individuals might have in their vehicles, they do not expect police to catalog "every single movement of an individual's car for a very long period." *Jones*, 132 S. Ct. at 964 (Alito, J., concurring).

The government has also argued that the Court should apply a "totality of the circumstances" balancing test to determine whether warrants should be required for prolonged GPS tracking, Gov't's Resp. to Def.'s Mot. to Suppress 2-3, ¶ 4, Mar. 26, 2012, ECF No. 70, but this ad hoc approach is fundamentally incompatible with the Supreme Court's longstanding directive that warrantless searches are presumptively unreasonable. *See Gant*, 556 U.S. at 338. To be sure, the Supreme Court has recognized some limited circumstances in which law enforcement agents are excused from meeting

9

the warrant and probable cause requirements, but none of these circumstances bears any resemblance to GPS tracking. They all involve situations in which individuals have reduced privacy expectations, *e.g., Samson v. California*, 547 U.S. 843, 847 (2007) (affirming suspicionless search of parolee), *New York v. Belton*, 453 U.S. 454 (1981) (search of automobile incident to arrest), or exigent circumstances, *e.g. Cardwell*, 417 U.S. at 589-90 ("automobile exception" for warrantless searches of interior of movable vehicles); *Terry v. Ohio*, 392 U.S. 1, 29 (1968) (warrantless patdowns by officers in field based on reasonable suspicion justified by threat to officers' safety), or involve administrative searches where the warrant and probable cause requirements are excused because the government has a purpose other than criminal law enforcement, *e.g. Chandler v. Miller*, 520 U.S. 305, 323 (1997) (suspicionless searches at airport and court entrances reasonable "where the risk to public safety is substantial and real"); *New York v. Burger*, 482 U.S. 691 (1987) (warrantless administrative search of closely regulated business). As the Supreme Court made clear in *Jones,* those circumstances are not remotely present here.

  Even if this Court were to accept the government's invitation to engage in ad hoc balancing of the privacy interests of individuals on the one hand and the law enforcement interest in warrantless tracking on the other, the balance tilts heavily in favor of the privacy interests, necessitating a warrant. Far from being a minimal intrusion on privacy, "GPS monitoring generates a precise, comprehensive record of a person's public movements . . . . The net result . . . may 'alter the relationship between citizen and government in a way that is inimical to democratic society.'" *Jones*, 132 S. Ct. at 955–956 (Sotomayor, J., concurring) (quoting *United States v. Cuevas–Perez,* 640 F.3d 272,

285 (7th Cir. 2011) (Flaum, J., concurring)). On the other side of the ledger, the government has demonstrated no measurable harm to law enforcement that would result from requiring a warrant before engaging in GPS tracking. The government asserts that officers need to "use GPS devices to gather information to *establish* probable cause." Gov't's Resp. to Def.'s Mot. to Suppress at ¶ 8. That statement constitutes impermissible bootstrapping and is a straight-faced concession that law enforcement will routinely use this highly invasive surveillance technique in cases lacking evidence that could convince a neutral magistrate. The purpose of requiring a warrant is to ensure that law enforcement officers do not overstep and conduct "improper searches" in an attempt to build a case. *Chadwick*, 433 U.S. at 9. Having provided no evidence of exigency or exhaustion of traditional investigation techniques, the government's claims of overwhelming need should be rejected.

## II.     THE EXCLUSIONARY RULE APPLIES.

The magistrate judge concluded in the alternative that the exclusionary rule should not apply, and that evidence obtained from the GPS tracker should not be suppressed, because agents "reasonably relied" on binding precedent, Second PTO at 28, but no such precedent exists. The magistrate judge's conclusion to the contrary rests on an overly expansive reading of *Davis v. United States*, 131 S. Ct. 2419 (2011), one that would impermissibly curtail the applicability of the exclusionary rule and frustrate its purpose of deterring constitutional violations by law enforcement agents.

In *Davis*, the Supreme Court held that the exclusionary rule does not apply "when the police conduct a search in compliance with binding precedent that is later overruled." *Davis*, 131 S. Ct. at 2423. In *Davis*, the police had carried out a search that

11

the defendant conceded "fully complied with 'existing Eleventh Circuit precedent.'" *Id.* at 2426 (citation omitted). Thereafter, while Davis's case was on direct review, the Supreme Court overturned that Eleventh Circuit precedent. *Id.* The question before the Court was whether to apply the exclusionary rule when "all agree that the officers' conduct was in strict compliance with then-binding Circuit law and was not culpable in any way." *Id.* at 2428. The Court held that the exclusionary rule did not apply because, "when binding appellate precedent specifically *authorizes* a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities." *Id.* at 2429.

The scope of *Davis* is narrow: it holds that the exclusionary rule does not apply where *binding* precedent actually *authorizes* a police practice. *Id.* Both criteria are important and must be satisfied. The precedent at issue must actually be settled and binding, i.e. a decision from the relevant circuit court or the Supreme Court. *Id.* at 2423-24. And the precedent must affirmatively authorize the conduct at issue. *Id.* at 2429. As Justice Sotomayor made clear in her concurring opinion, "[t]his case does not present the markedly different question whether the exclusionary rule applies when the law governing the constitutionality of a particular search is unsettled." *Id.* at 2435.

Contrary to the magistrate judge's conclusion, *Davis* has no bearing on the application of the exclusionary rule to the GPS tracking that took place in this case. At the time of the tracking, there were no Eighth Circuit or Supreme Court cases that authorized warrantless GPS tracking. The Eighth Circuit's decision in *Marquez* was not issued until four months *after* the agents engaged in the GPS tracking in this case.

12

Neither the magistrate judge nor counsel for the United States has identified any other Eighth Circuit case law that is arguably applicable.

Nor was there any binding Supreme Court case law that authorized the conduct at issue here. To be sure, at the time the surveillance in this case took place, the Supreme Court had addressed on two occasions whether location tracking constitutes a search. *Knotts*, 460 U.S. at 276; *United States v. Karo*, 468 U.S. 705 (1984). But as all of the justices agreed in *Jones*, it was not necessary for the Court to overrule either *Knotts or Karo* to conclude that attaching a GPS device to a car and monitoring the car's movements for 28 days was a search. *Jones*, 132 S. Ct. at 951-52 (majority opinion); *id.* at 964 (Alito, J., concurring). Given that the surveillance the officers carried out here is indistinguishable from that which took place in *Jones*, and *Jones* expressly did not overrule either *Knotts* or *Karo*, it cannot be that those cases constituted binding precedent authorizing the agents' conduct here.

The magistrate judge reached a contrary conclusion by construing *Davis*'s exception to the exclusionary rule too broadly, importing the highly protective qualified immunity standard applicable to damages suits against individual agents into the suppression context where it does not belong. The magistrate judge conceded that "neither *Knotts* nor *Karo* precisely authorized the warrantless trespassory installation of use of a GPS tracker device," but nonetheless excused reliance on these precedents because "the agents' belief that their actions were permitted under these holdings was reasonable." Second PTO at 30. But that is not the proper inquiry under *Davis*. The question is whether "binding appellate precedent specifically *authorizes* a particular police practice." 131 S. Ct. at 2429. Because the surveillance in this case is

13

indistinguishable from that which took place in *Jones*, and the Court in *Jones* held neither *Knotts* nor *Karo* was overruled, it cannot be the case that the conduct at issue here was authorized by *Knotts* or *Karo*.[3]

Applying *Davis* to prohibit application of the exclusionary rule in this case would frustrate the exclusionary rule's very purpose: deterring constitutional violations by law enforcement agents. "[T]o to move beyond the strict *Davis* holding sharpens the instruments that can effectively eviscerate the exclusionary rule entirely." *United States v. Katzin*, No. 11-226, 2012 WL, 1646894, at *8 (E.D. Pa. May 9, 2012) (granting motion to suppress evidence gathered through warrantless GPS tracking). This is so for two reasons. First, once *Davis*'s clearly delineated exception to exclusion is expanded beyond unequivocally binding precedent, there is no clear stopping point. *Id.* at *9 ("Is law enforcement reliance on a significant minority or, somewhat better, a bare majority of circuits to have addressed the topic enough, or is an overwhelming majority, if not unanimity, required? Does it matter *which* circuits (or which panels in which circuits) support or condemn the investigatory practice? Does it matter how many circuits have squarely addressed the issue?"). Second, such an expansion would create precisely the wrong incentive for law enforcement: as one court has explained, "opening to the Government the shelter of the good faith exception in this case would encourage law enforcement to beg forgiveness rather than ask permission in ambiguous situations

---

[3] The magistrate judge's erroneously broad construction of *Davis* is also apparent from the Court's reliance on out-of-circuit case law to conclude that the exclusionary rule does not apply. Second PTO at 31 (pointing to *United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010); *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007)). The holding in *Davis* was limited to waiving application of the exclusionary rule where "binding appellate precedent" was involved, and there is no such precedent available to the government in this case.

14

involving the basic civil rights." *Id.*; *see also United States v. Johnson*, 457 U.S. 537, 561 (1982) (explaining that non-retroactivity of rulings resolving unsettled Fourth Amendment questions would provide law enforcement officials little incentive to err on the side of constitutional behavior).

This Court should reject the government's invitation to extend *Davis* beyond its proper confines in a way that would fundamentally undermine the deterrence of unconstitutional conduct. In this case, the agents and their counsel made the strategic decision to read the Court's location-tracking precedents aggressively to sanction the warrantless, unsupervised use of highly sophisticated surveillance technology. This Court should not insulate them from the consequences of that choice; instead, it should further the deterrence rationale that motivated adoption of the exclusionary rule in the first place and apply that rule here.

## CONCLUSION

For the foregoing reasons, defendant's motion to suppress should be GRANTED.

July 13, 2012                                                                 Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert
Bar No. 44827MO
Grant R. Doty
Bar No. 60788MO
ACLU OF EASTERN MISSOURI
454 Whittier Street
St. Louis, MO 63108
Telephone: 314.669.3420
Facsimile: 314.652.3112
Email: tony@aclu-em.org

Catherine Crump[*]
*Pro hac vice pending*
Ben Wizner
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212.549.2500
Facsimile: 212.549.2651
Email:ccrump@aclu.org

---

[*] Counsel wish to thank law student Andrew Crocker for his assistance in the preparation of this brief.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and a copy was made available electronically to all electronic filing participants.

/s/ Anthony E. Rothert